UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
GUNDERSON AMAZING FIREWORKS, LLC,

                         Plaintiff,           <u>MEMORANDUM & ORDER</u>
                                              12-CV-3869(JS)(WDW)

       -against-

MERRICK BANK, MERRICK BANK MERCHANT
SERVICES DIVISION, CARDWORKS, L.P.,
and PINNACLE PROCESSING GROUP, INC.,

                         Defendants.
----------------------------------------X
FIREWORKS UNLIMITED, LLC,

                         Plaintiff,           12-CV-3871(JS)(WDW)
                                             (Member Case)

       -against-

MERRICK BANK, MERRICK BANK MERCHANT
SERVICES DIVISION, CARDWORKS, L.P.,
and PINNACLE PROCESSING GROUP, INC.,

                         Defendants.
----------------------------------------X
KENACO SALES, LLC,

                         Plaintiff,           12-CV-3872(JS)(WDW)
                                               (Member Case)

       -against-

MERRICK BANK, MERRICK BANK MERCHANT
SERVICES DIVISION, CARDWORKS, L.P.,
and PINNACLE PROCESSING GROUP, INC.,

                         Defendants.
----------------------------------------X
FIREWORKS CENTER 25, LLC,

                         Plaintiff,           12-CV-3873(JS)(WDW)
                                             (Member Case)

       -against-

MERRICK BANK, MERRICK BANK MERCHANT
SERVICES DIVISION, CARDWORKS, L.P.,

and PINNACLE PROCESSING GROUP, INC.,

                              Defendants.
------------------------------------X
LADY LUCKS WHOLESALE & RETAIL
FIREWORKS, LLC,

                    Plaintiff,        12-CV-4019(JS)(WDW)
                                      (Member Case)

            -against-

MERRICK BANK, MERRICK BANK MERCHANT
SERVICES DIVISION, CARDWORKS, L.P.,
and PINNACLE PROCESSING GROUP, INC.,

                              Defendants.
------------------------------------X
APPEARANCES
For Plaintiffs:     Donald E. Creadore, Esq.
                    The Creadore Law Firm
                    305 Broadway, 14th Floor
                    New York, NY 10007

For Defendants:     Daniel Seth Weinberger, Esq.
                    Mark W. Stoutenburg, Esq.
                    Gibbons P.C.
                    One Pennsylvania Plaza, 37th Floor
                    New York, NY 10119

SEYBERT, District Judge:

        This is a consolidated action involving suits by

Plaintiffs Gunderson Amazing Fireworks, LLC ("GAF"), Fireworks

Unlimited, LLC, Kenaco Sales, LLC, Fireworks Center 25, LLC, and

Lady Lucks Wholesale & Retail Fireworks, LLC (collectively

"Plaintiffs") against Defendants Merrick Bank ("Merrick"),

Merrick Bank Merchant Services Division ("MMS"), Cardworks, L.P.

("CWLP"), and Pinnacle Processing Group, Inc. ("PPG" and

collectively, "Defendants").  Currently pending before the Court

is Defendants' motion to dismiss or, in the alternative, motion for summary judgment (Docket Entry 29).  For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

<u>BACKGROUND</u>

Plaintiffs are retail sellers of consumer fireworks who entered into Merchant Agreements in 2010 with Defendants whereby Defendants would process Plaintiffs' credit card sales transactions.  (GAF Am. Compl.[1] ¶ 9.)  The Merchant Agreements that each of the Plaintiffs signed are nearly identical, except that GAF's Merchant Agreement contains a choice-of-law provision providing that Washington law governs, whereas the remaining Merchant Agreements provide for the governance of Ohio law. According to Plaintiffs, Merrick is a banking institution, of which MMS is a subsidiary,[2] CWLP is another banking institution,[3] and PPG is a credit card processor.[4]  (GAF Am. Compl. ¶¶ 2-5.)

---

[1] Shortly before the cases were consolidated, Plaintiffs filed Amended Complaints in their independent actions.  The Amended Complaints are primarily identical and, for ease of reference, the Court will refer to the Amended Complaint filed in <u>Gunderson Amazing Fireworks, LLC v. Merrick Bank et al.</u>, No. 12-CV-3869, Docket Entry 26 ("GAF Am. Compl."), noting any differences among the Plaintiffs and their Amended Complaints when necessary.

[2] Defendants maintain that MMS is not a separate legal entity subject to suit.  (Defs.' Br. in Support ("Defs.' Br."), Docket Entry 36, at 27.)

Merrick, as defined by the Merchant Agreements, is in the general banking business, including providing settlement services to merchants that accept valid credit and debit cards bearing Visa, Mastercard, or Discover service marks. (GAF Am. Compl. ¶ 12.) The Amended Complaints do not specify the exact relationships between the parties, but Defendants assert, and Plaintiffs do not dispute, that acquiring banks such as Merrick will sometimes delegate their authority to Independent Sales Organizations ("ISOs"). (See Defs.' Br. at 5.) Although Plaintiffs at times refer to PPG as a credit card processor, the Merchant Agreements define PPG as the ISO. (GAF Am. Compl. ¶ 11.)

In exchange for Merrick and PPG's services, "including arranging for Authorization . . . and processing services" (GAF Am. Compl. ¶ 11), Plaintiffs paid Merrick and PPG small processing and related fees for each credit or debit card transaction, which Merrick and PPG were authorized to deduct from Designated Deposit Accounts ("DDAs"). (GAF Am. Compl. ¶ 13.)

---

[3] Defendants dispute that CWLP is a financial institution, and instead maintain that it is the ultimate parent company of Merrick that does not provide any services. (Defs.' Br. at 6.)

[4] According to Defendants, PPG is an Independent Sales Organization, not a credit card processor. (Defs.' Br. at 6.)

Initially, the parties' business relationships proceeded without incident. (GAF Am. Compl. ¶ 15.) In approximately March 2012, however, "JetPay Merchant Services, LLC began to perform certain processing services for and on behalf of the Defendants . . . ." (GAF Am. Compl. ¶ 15.) Approximately one month later, in or about April 2012, Plaintiffs began receiving complaints from customers that they were being double- and triple-charged for their purchases. (GAF Am. Compl. ¶ 16.)

Plaintiffs allege that Defendants "improperly and recklessly mismanaged" the DDAs, that "Defendants are responsible for generating fictitious credit/debit charges," and that "Defendants failed to institute proper measures against, inter alia, the risks associated with repetitive fictitious charges." (GAF Am. Compl. ¶¶ 21-23 (emphasis omitted).) Accordingly, Plaintiffs assert causes of action for: (1) breach of contract, (2) negligence, (3) "unfair business practice," (4) breach of the duty of good faith, (5) breach of fiduciary duty, and (6) unjust enrichment.

## DISCUSSION

Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Court lacks subject matter jurisdiction and that the Amended Complaints fail to state a claim upon which

relief can be granted or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that the Court lacks subject matter jurisdiction.[5]  The Court will first address the issue of subject matter jurisdiction before turning to the remainder of Defendants' motion.

I.  Subject Matter Jurisdiction

Defendants move to dismiss or, in the alternative, for summary judgment because, they assert that, inter alia, this Court lacks subject matter jurisdiction.  The Court finds that it cannot definitely determine subject matter jurisdiction at this stage and, accordingly, Defendants' motion in this regard is DENIED.

A.  12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions.  See Morrison v. Nat'l Australia Bank, Ltd., 547 F.3d

_____

[5] The Court has provided a somewhat simplified recitation of Defendants' motion.  For a more complete description, see Defendants' Notice of Motion (Docket Entry 29).

6

167, 170 (2d Cir. 2008).   The Court must accept as true the factual allegations contained in the complaint, but it will not draw argumentative inferences in favor of Plaintiffs because subject matter jurisdiction must be shown affirmatively.   See id.; Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).   "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."   Makarova, 201 F.3d at 113.

B.   Federal Question Jurisdiction

Preliminarily, the Court notes that Plaintiffs have failed to allege federal question jurisdiction.   "Federal question jurisdiction exists when an action 'aris[es] under the Constitution, laws, or treaties of the United States.'" Gucciardo v. Reliance Ins. Co., 84 F. Supp. 2d 399, 402 (E.D.N.Y. 2000) (alteration in original) (quoting 28 U.S.C. § 1331).   Here, the only reference to federal laws is a general assertion in the Amended Complaints that "Defendants' actions constitute an unfair business practice under state and federal laws."   (GAF Am. Compl. ¶ 34.)   Plaintiffs cite to no federal statute nor do they offer any allegations to suggest federal question jurisdiction.   Furthermore, Defendants specifically argued for dismissal based upon a lack of federal question

jurisdiction, and Plaintiffs have not offered any opposition. Accordingly, Plaintiffs have abandoned any assertion of federal question jurisdiction.  See <u>Adams v. N.Y. State Educ. Dep't</u>, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (claim deemed abandoned because plaintiff did not respond to, or even mention, claim in opposition to defendants' motion to dismiss).

   C.  <u>Diversity Jurisdiction</u>

       Thus, the Court turns to whether Plaintiffs have adequately alleged diversity jurisdiction.  "Where a civil action between citizens of different states involves an amount in controversy in excess of $75,000, excluding interest and costs, the federal courts have subject matter jurisdiction based on diversity of citizenship."  <u>Gucciardo</u>, 84 F. Supp. 2d at 402 (citing 28 U.S.C. § 1332).

       1.  <u>Citizenship</u>

       Defendants maintain that Plaintiffs have not adequately alleged the citizenship of its members in order to show diversity.  The Court disagrees.

       Jurisdiction based upon diversity requires complete diversity such that the citizenship of the plaintiffs is different than that of each of the defendants.  <u>See</u> 28 U.S.C. § 1332; <u>accord</u> <u>Winkler v. Hirsch</u>, No. 12-CV-3893, 2012 WL 3779295, at *1 (E.D.N.Y. Aug. 30, 2012).  "For diversity purposes, the citizenship of a limited liability company ('LLC')

8

depends upon the citizenship of its members." Mackason v. Diamond Fin. LLC, 347 F. Supp. 2d 53, 55 (S.D.N.Y. 2004) (citing Handelsman v. Bedford Vill. Assoc. Ltd. P'ship, 213 F.3d 48, 51 (2d Cir. 2000)). Here, Plaintiffs have submitted affidavits affirming that their members are citizens of Missouri, Texas, and Oklahoma. (Kueck Aff., Docket Entry 39; Herzog Affs., Docket Entries 42-47; Kapchinsky Aff., Docket Entry 48.) Defendants, in contrast, are citizens of Washington, Utah, and New York. (See Defs.' Br. at 17-18, n.11-13.) Although Defendants assert that Plaintiffs' affidavits state residency only (Defs.' Reply Br., Docket Entry 61, at 2 n.2), the affidavits also include citizenship, and are therefore sufficient. Accordingly, Defendants' motion in this regard is DENIED.

    2.  Amount in Controversy

Defendants additionally argue that Plaintiffs have failed to assert an amount in controversy in excess of $75,000 because each of the Merchant Agreements expressly limits Defendants' liability to the lesser of $50,000 or the amount of fees received by Merrick and PPG for services performed in the immediately preceding twelve months. Plaintiffs counter that the limitation of liability clause contained in each Merchant Agreement is unconscionable and therefore void.

Plaintiffs bear the burden of showing that there is a "reasonable probability that the claim is in excess of the statutory jurisdictional amount." Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks and citation omitted). "Generally, this probability is easily met, since there exists a rebuttable presumption that the face of a plaintiff's complaint is a 'good faith representation of the actual amount in controversy.'" Int'l Christian Broad., Inc. v. Koper, --- F. Supp. 2d ----, 2013 WL 664895, at *2 (E.D.N.Y. Feb. 19, 2013) (quoting Wood v. Maguire Auto., LLC, 508 F. App'x 65, 65 (2d Cir. 2013)). However, the alleged amount of damages "may be rejected . . . upon a showing to a legal certainty that the claim is actually for less than the jurisdictional amount to justify dismissal." Gucciardo, 84 F. Supp. 2d at 402.

Here, Defendants maintain that the Merchant Agreements and, more specifically, the limitation of liability clauses therein, limit Plaintiffs' damages to a maximum of $50,000 per plaintiff and, thus, "to a legal certainty," the damages Plaintiffs seek fall below the jurisdictional amount. Correctly anticipating that Plaintiffs would oppose on the grounds that the limitation of liability clauses are unconscionable, Defendants submit affidavits and evidentiary material and urge the Court to convert their motion to one for summary judgment

10

and find in their favor.  The Court finds, however, that even though Plaintiffs have submitted affidavits and evidence of their own, conversion is inappropriate.

The parties devote significant portions of their respective briefs to the issue of whether the limitation of liability clauses are unconscionable.  Limitation of liability clauses are potentially valid under both Ohio and Washington law and, in fact, the two states take similar approaches to the issue.  See, e.g., Doe v. SexSearch.com, 551 F.3d 412, 419 (6th Cir. 2008) ("Limitation-of-liability clauses are viewed critically, but may be freely bargained for in Ohio and will be enforced absent public policy concerns, unconscionability, or vague and ambiguous terms." (internal quotation marks and citation omitted)); Reule v. H.O. Seiffert Co., No. 08-CV-1591, 2009 WL 2057047, at *3 (W.D. Wash. July 13, 2009) (listing the non-exclusive factors that Washington courts consider in determining whether a limitation of liability clause is unconscionable).

However, "[i]n Ohio, 'although an exculpatory clause to limit one's liability due to negligence may be valid and enforceable, . . . such a clause is ineffective where the party seeking protection failed to exercise any care whatsoever, [or] where there was willful or wanton misconduct . . . .'" Airlink Commc'ns, Inc. v. Owl Wireless, LLC, No. 10-CV-2296, 2011 WL

11

4376123, at *4 (N.D. Ohio Sept. 20, 2011) (quoting <u>Ohio Cas.</u>
<u>Inc. Co. v. D & J Distrib. & Mfg.</u>, 2009 Ohio 3806, ¶ 36 (Ohio
Ct. App. 2009)) (second alteration added). Similarly,
Washington courts have held that "[a] limitation of liability
clause may not apply where the party relying on the clause acted
in 'bad faith.'" <u>Valve Corp. v. Sierra Entm't, Inc.</u>, 431 F.
Supp. 2d 1091, 1101 (W.D. Wash. 2004).

      Here, Plaintiffs allege that Defendants acted
"recklessly," (GAF Am. Compl. ¶ 21) and, at least arguably
allege that Defendants acted intentionally or with some form of
wanton misconduct or bad faith. Thus, while the parties submit
a considerable amount of evidence regarding whether the
limitation of liability clauses at issue here were
unconscionable, this evidence is not relevant to the Court's
analysis. Rather, Plaintiffs have alleged that Defendants acted
in a manner beyond mere negligence, thus potentially
invalidating the limitation of liability clauses. As such, the
Court cannot say to a legal certainty, at this juncture, that
the amount in controversy is below the jurisdictional threshold
and, accordingly, Defendants' motion in this regard is DENIED.

II. <u>Defendants' Motion</u>

      The Court will first address the applicable legal
standard on a motion to dismiss before turning to Defendants'

arguments more specifically.[6]

A.  Legal Standard

In deciding Rule 12(b)(6) motions to dismiss, the
Court applies a "plausibility standard," which is guided by
"[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662,
678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v.
Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the
Court must accept all allegations as true, this "tenet" is
"inapplicable to legal conclusions;" thus, "[t]hreadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." Iqbal, 556 U.S. at 678;
accord Harris, 572 F.3d at 72. Second, only complaints that
state a "plausible claim for relief" can survive a Rule 12(b)(6)
motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether

---

[6] Although Defendants moved for summary judgment in the
alternative, their notice of motion makes clear that they seek
summary judgment only on the issues of subject matter
jurisdiction and inclusion of CWLP and MMS as defendants. (See
generally Defs.' Notice of Motion.) As the Court declines to
convert to summary judgment, and because the remainder of
Defendants' motion is one to dismiss for failure to state a
claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this
Memorandum and Order will address the standard only under that
rule.

Furthermore, to the extent that the parties dispute whether
Plaintiffs waived a potential attorney-client privilege (see
Docket Entries 62-64), the Court has not converted Defendants'
motion to one for summary judgment and therefore has not
considered extraneous evidence. In any event, this is an issue
more appropriately raised with Magistrate Judge William D. Wall
as part of discovery.

a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

B.   Application

Defendants maintain that Plaintiffs have failed to state a claim for each and every cause of action that they assert.  Interestingly, Plaintiffs offer no opposition to these particular arguments, choosing instead to oppose only whether the limitation of liability clauses are unconscionable.  (See generally Pls.' Opp. Br.)  Thus, Plaintiffs appear to concede the inadequacy of their complaints.  Accordingly, Defendants' motion to dismiss is GRANTED.

III.  Leave to Amend

Finally, Plaintiffs' opposition brief contains a one-paragraph request that the Court permit them to further amend their operative complaints. (Pls.' Opp. Br. at 35.)  The Court will first address the applicable legal standard before turning to Plaintiffs' request.

A.   Legal Standard

Courts should grant leave to amend "when justice so requires."  FED. R. CIV. P. 15(a)(2).  Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.  See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).  To

14

determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002).

    B.  Application

       Plaintiffs' brief, one-paragraph request to amend does not explain exactly what claims they intend to allege if allowed to amend, nor does it provide a proposed amended complaint.

       To the extent that Plaintiffs intend to re-allege a claim for breach of contract, they may not also assert claims for negligence and breach of the duty of good faith under Ohio law, as such claims would be futile.  See Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc., 437 F. App'x 381, 385 (6th Cir. 2011) (explaining that the existence of a valid contract precludes tort claims based upon the same set of actions); Ogle v. BAC Home Loan Servicing, LP, 924 F. Supp. 2d 902, 914-15 (S.D. Ohio 2013) ("[A] breach of covenant of good faith and fair dealing does not stand alone as a separate cause of action from a breach of contract claim." (internal quotation marks and citation omitted)); Jedson Eng'g, Inc. v. Spirit Const. Servs., Inc., 720 F. Supp. 2d 904, 928 (S.D. Ohio 2010) ("In Ohio, there is no separate tort cause of action for breach of good faith that is separate from a breach of contract claim."); but see

15

<u>Microsoft Corp. v. Motorola, Inc.</u>, --- F. Supp. 2d ----, 2013 WL 4053225, at *5 (W.D. Wash. Aug. 12, 2013) (defining the standard for a good faith and fair dealing claim under Washington law); <u>Hayton Farms Inc. v. Pro-Fac Corp. Inc.</u>, No. 10-CV-0520, 2010 WL 5174349, at *2 (W.D. Wash. Dec. 14, 2010) ("In New York, a cause of action for negligent performance of a contract does not exist.  In contrast, a tort by that name does exist under Washington law." (internal quotation marks and citation omitted)).  Furthermore, a cause of action sounding in unjust enrichment pursuant to both Ohio and Washington law would likewise be futile because where, as here, there is no dispute that a valid contract exists, the plaintiff cannot seek quasi-contractual relief under an unjust enrichment theory.  <u>See ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P.</u>, 750 F. Supp. 2d 839, 849 (N.D. Ohio 2010); <u>Minnick v. Clearwire US, LLC</u>, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010).

The same is true of any purported claim for gross negligence under Ohio law.  <u>See</u> <u>Wells Fargo Bank, N.A. v. Fifth Third Bank</u>, --- F. Supp. 2d ----, 2013 WL 1064829, at *4-5 (S.D. Ohio Mar. 14, 2013).  Plaintiffs' request to amend contains vague arguments that Defendants have taken advantage of "flaw[s]" in the respective complaints and that "each plaintiff alleges that Defendants had acted recklessly and negligently, without using magical terms like[] 'grossly negligent' and

16

'willful misconduct.'"  (Pls.' Opp. Br. at 35.)  To the extent that these arguments indicate Plaintiffs' intention to assert a separate claim for gross negligence, such a claim would be duplicative of their breach of contract claim, and therefore amendment would be futile.

With respect to Plaintiffs' remaining claims, Plaintiffs have at least theoretically presented colorable claims for relief.  See Garcia v. Pancho Villa's of Huntington Vill., Inc., 268 F.R.D. 160, 165 (E.D.N.Y. 2010) (noting that justice requires leave to replead if the plaintiff has presented "at least colorable grounds for relief (internal quotation marks and citation omitted)).  Accordingly, Plaintiffs are granted leave to amend their breach of contract, breach of fiduciary duty, and unfair business practices claims.

Finally, it is wholly unclear whether Plaintiffs intend to proceed with their claims against CWLP and MMS. Defendants move to dismiss CWLP "because Plaintiffs allege no facts to support a plausible claim against CWLP . . . ." (Defs.' Br. at 27.)  Thus, to the extent that Plaintiffs intend to direct their claims to CWLP in an amended pleading, the Court will not dismiss CWLP at this stage.  In addition, insofar as Defendants submit extraneous evidence regarding MMS, the Court has declined conversion to summary judgment and, therefore, the Court will not proffer any ruling in this regard.

Accordingly, Plaintiffs are GRANTED leave to file a Consolidated Amended Complaint against Defendants as specified above.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or for summary judgment for lack of subject matter jurisdiction is DENIED. Defendants' motion to dismiss is otherwise GRANTED. Plaintiffs' claims for unjust enrichment under both Washington and Ohio law, and their claims for negligence and breach of the duty of good faith under Ohio law, are DISMISSED WITH PREJUDICE. Plaintiffs' remaining claims are DISMISSED WITHOUT PREJUDICE to filing a Consolidated Amended Complaint in compliance with this Memorandum and Order.

If Plaintiffs intend to file a Consolidated Amended Complaint, they must do so within thirty (30) days of the date of this Memorandum and Order. The Consolidated Amended Complaint should be a single complaint as this is now a consolidated action. If Plaintiffs do not file a Consolidated Amended Complaint within the specified period, the case will be closed.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     September   24  , 2013
           Central Islip, NY

18